UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

AMMAR FAROUQ YOUSEF AHMAD,

Petitioner,

v.

MARKWAYNE MULLIN, et al.,

Respondent.

Case No. 2:26-cv-02194-TLF

ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS

Petitioner Ammar Farouq Yousef Ahmad filed a petition for writ of habeas corpus under 28 U.S.C. § 2241. Dkt. 1. Petitioner is currently detained by the U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington.

The petition asks the Court to (1) declare that petitioner's detention without an individualized determination violates the Due Process Clause of the Fifth Amendment; (2) issue a writ of habeas corpus ordering the respondents to release petitioner; and (3) award attorney fees and costs.

The Court **GRANTS IN PART and DENIES IN PART** the petition, as follows.

**FACTUAL BACKGROUND**

Petitioner is a native and citizen of Jordan who entered the United States without inspection or admission near San Ysidro, California, on or about April 15, 2024. Dkt. 6 (Decl. of Nhat Truong ("Truong Decl.")), ¶ 4. On April 15, 2024, Border Patrol

encountered petitioner, determined he had entered illegally, and initially processed him for removal. *Id.*, ¶ 5.

Petitioner was released on an Order of Release on Recognizance ("OREC"), dated April 18, 2024. *Id.*, ¶ 6; Dkt. 7 (Decl. of Lawrence Van Daley ("Van Daley Decl."), Ex. 2, (OREC). The terms of the OREC provide for release with certain conditions, including that he "not violate any local, State or Federal laws or ordinances." *Id.* On April 18, 2024, petitioner was served with a Notice to Appear ("NTA") charging him as removable under 8 U.S.C. § 1182(a)(6)(A)(i). Dkt. 6 (Truong Decl.), ¶ 7; Dkt. 7 (Van Daley Decl.), Ex. 1, NTA. On May 3, 2023, petitioner applied to United States Citizenship and Immigration Services ("USCIS") for an F-1 visa as an academic student. Dkt. 7 (Van Daley Decl.), Ex. 3, (Form I-213).

On August 11, 2024, petitioner was arrested in Bellevue, Washington, on suspicion of Driving Under the Influence. Dkt. 6 (Truong Decl.), ¶ 8; Dkt. 7 (Van Daley Decl.), Ex. 3 (Form I-213). Respondents present the declaration of Deportation Officer Nhat Truong and the DHS Form I-213 which reflect that the criminal charges for Driving Under the Influence ("DUI") remain pending in King County District Court under case number A3068421. Dkt. 6 (Truong Decl.), ¶ 8; Dkt. 7 (Van Daley Decl.), Ex. 3 (Form I-213). The petition also asserts that the criminal charges for this arrest remain pending. Dkt. 1 at 2. The petition states petitioner hired defense counsel for this matter and was told that no court date had been assigned in the District Court; he has also followed up on the matter several times himself, receiving the same response that his charge is merely "pending." *Id.*

Petitioner submitted the Washington State DUI Arrest Report for petitioner's August 11, 2024, arrest. Dkt. 8-1. The report reflects that petitioner was pulled over after making multiple lane incursions; the arresting officer observed that he had bloodshot, watery, glossy eyes. *Id.* The report states the arresting officer performed a field sobriety test and including the Walk-And-Turn test where he observed that petitioner could not keep balance and began too soon, took the wrong number of steps, and that on the One Leg Standing test petitioner put his foot down, used his arms for balance, sway and hop. *Id.* The report also reflects that the arresting officer could smell alcohol coming from petitioner's breath as he spoke. *Id.*

In his traverse, petitioner submitted the declaration of his attorney who states he "contacted the King County District Court's East Division in Bellevue, Washington, offering the case number referenced in Form I-213, the Petitioner's date of birth and true name, and the date and location of his DUI arrest" and that the clerk "confirmed there is no active case within the District Court's system for the Petitioner." Dkt. 8. In response to the Court's order directing petitioner to provide more records and briefing on the status of petitioner's DUI charge, petitioner's counsel submitted an email from the King County District Court, East Division affirming that no case could be found under the case number A3068421, nor by using petitioner's name and date of birth. Dkt. 10-1.

The letter further states that as prosecutors have discretion for the filing of DUI's it was likely still possible for prosecutors to file charges on this case. *Id.* Petitioner later filed with this Court a letter from the King County District Court stating that the clerk had, in fact located a record for petitioner under case number 5A01127777; the record

showed a date of February 8, 2025, and a charge of “no valid oper license with valid ID.” *Id.*

On March 31, 2025, petitioner filed an Application for Asylum and for Withholding of Removal. Dkt. 6 (Truong Decl.), ¶ 10.

On June 10, 2026, petitioner reported for a scheduled check-in with ICE Enforcement and Removal Operations (“ERO”). Dkt. 6 (Truong Decl.), ¶ 12; Dkt. 7 (Van Daley Decl.), Ex. 3 (Form I-213). During routine database queries, ERO officers learned of the DUI arrest and that petitioner had applied for an F-1 visa but the F-1 visa had been cancelled by U.S. Citizenship and Immigration Services (“USCIS”) on January 28, 2025.[1] Dkt. 6 (Truong Decl.), ¶¶ 12-13; Dkt. 7 (Van Daley Decl.), Ex. 3 (Form I-213).

Based on this newly discovered information, ICE conducted a custody redetermination, revoked the OREC, and took petitioner into custody the same day. Dkt. 6 (Truong Decl.), ¶¶ 12-15; Dkt. 7 (Van Daley Decl.), Ex. 4, (Warrant and Custody Determination), Ex. 2 (OREC). Petitioner asserts he was told that his re-detention was because of his prior DUI arrest; he learned this at the time he was re-detained, as his OREC was cancelled and he received the Form I-220A. Dkt. 1 at 3. Petitioner was transported to the NWIPC, where he remains detained. Dkt. 6 (“Truong Decl.”), ¶ 15. Petitioner was scheduled for a master calendar hearing with the immigration judge on July 14, 2026. *Id.*, ¶ 18.

## DISCUSSION

### A. Mandatory v. Discretionary Detention

[1] According to the petition, Mr. Ahmad was under the impression that his student visa was never approved. Dkt. 1 at 2.

The respondents argue relief should be denied because petitioner is mandatorily detained under 8 U.S.C. § 1225. Dkt. 7 at 3-7. In determining whether petitioners who have been apprehended on arrival, released, and later apprehended again, are subject to discretionary detention under 28 U.S.C. § 1226(a) or mandatory detention under § 1225(b), the Court considers the respondents' treatment of the petitioner seeking habeas relief as "particularly relevant." *Del Valle Castillo v. Wamsley*, No. 2:25-CV-02054-TMC, 2025 WL 3524932, at *5 (W.D. Wash. Nov. 26, 2025). Where petitioner is "'treated by Respondents as subject to detention under § 1226, rather than mandatory detention under § 1225,' the former is more likely to apply." *Id.* (quoting *Romero v. Hyde*, No. CV 25-11631-BEM, 2025 WL 2403827, at *8 (W.D. Wash. Aug. 19, 2025).

Persons detained under § 1225 may only be released under the agency's parole authority. 8 U.S.C. § 1182(d)(5)(A). Here, the parties agree petitioner was released on an Order of Recognizance ("OREC"). Release or "conditional parole" under an OREC is authorized under § 1226(a)(2)(B). *See* 8 U.S.C. § 1226(a)(2)(B); *see also Ortega-Cervantes v. Gonzales*, 501 F.3d 1111, 1115-16 (9th Cir. 2007) (holding noncitizens released on an OREC must necessarily have been detained and released under § 1226). Furthermore, the Notice to Appear ("NTA") reflects that petitioner is charged only under § 1182(a)(6)(A)(i) as "present in the United States without being admitted or paroled" which supports the conclusion that he is detained under § 1226(a). *Del Valle Castillo*, 2025 WL 3524932, at *6; *Rodriguez Vazquez v. Bostock*, 183 F.4th 1160 (9th Cir. 2026).

The Court thus finds § 1226 governs petitioner's detention, and he is not subject

to mandatory detention under § 1225.[2]

**B. Due Process**

Under the Due Process Clause of the Fifth Amendment, "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law . . . " This right extends to "all persons within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

Petitioner argues his re-detention violates the Due Process Clause under *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). Dkt. 1 at 11-17. To assess petitioner's arguments, the Court adopts the reasoning of *E.A. T.-B.*, 795 F. Supp. 3d at 1320-24, in weighing the *Mathews* factors which include: (1) The private interest affected by the official action; (2) the risk of erroneous deprivation of such interest through the procedures used, and the probable value of additional or substitute procedural safeguards; and (3) the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. *Mathews*, 424 U.S. at 335; *Rodriquez Diaz v. Garland*, 53 F.4th 1189, 1206-07 (9th Cir. 2022) (assuming without deciding that the *Mathews* test applies "in the immigration detention context.").

While the U.S. Constitution generally requires some kind of hearing before the State deprives a person of liberty or property, there still may be situations in which a

[2] The Court notes that even if petitioner were subject to mandatory detention under § 1225, his re-detention must still comply with due process.

prompt post-deprivation hearing is appropriate. *See Guillermo M. R. v. Kaiser*, 791 F. Supp. 3d 1021, 1035-36 (N.D. Cal. July 17, 2025).

1) Private Interest

Under the first *Mathews* factor, the Court determines the private interest that will be affected by the official action. Petitioner's interest in not being detained is "the most elemental of liberty interests[.]" *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004).

The respondents argue that they were entitled to re-detain petitioner without additional process based on his new criminal charge for driving under the influence, which violated the terms of his OREC. Dkt. 5.

"Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action." *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992); *see also Zadvydas*, 533 U.S. at 696 (finding that a non-citizen has a liberty interest "strong enough" to challenge "indefinite and potentially permanent" immigration detention). And "individuals who have been released from custody, even where such release is conditional, have a liberty interest in their continued liberty." *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093, No. 2:25-cv-00647-DJC-DMC, (E.D. Cal. Mar. 3, 2025); *Hernandez v. Sessions*, 872 F.3d 976, 981 (9th Cir. 2017) ("While the temporary detention of non-citizens may sometimes be justified by concerns about public safety or flight risk, the government's discretion to incarcerate non-citizens is always constrained by the requirements of due process[.]"); *E.A. T.-B.*, 795 F. Supp. 3d at 1320–21.

The Supreme Court "usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property." *See Zinermon v.*

*Burch*, 494 U.S. 113, 127 (1990) (emphasis in original). Yet the Court also recognized that there may be situations that urgently require arrest, in which a prompt post-deprivation hearing is appropriate. *Martinez Hernandez v. Andrews*, No. 1:25-CV-01035 JLT HBK, 2025 WL 2495767, at *11 (E.D. Cal. Aug. 28, 2025) (citing *Zinermon*, 494 U.S. at 128 (noting there may be "special case[s]" where a pre-deprivation hearing is impracticable); *Guillermo M. R.*, 2025 WL 1983677, at *9 ("absent evidence of urgent concerns, a *pre*-deprivation hearing is required to satisfy due process, particularly where an individual has been released on bond by an IJ").

Courts have also held that if a noncitizen is released after an evaluation of their dangerousness and flight risk, their re-arrest and re-detention generally require a showing of a material change in circumstance. *See, e.g.*, *dos Santos v. Noem*, No. 1:25-CV-12052-JEK, 2025 WL 2370988, at *9 (D. Mass. Aug. 14, 2025) (granting habeas relief and immediate release where Government presented no evidence that "a change in circumstances" supported its decision to revoke the IJ's bond order); *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1197 (N.D. Cal. 2017) (citing *Sugay* and noting government counsel's representation that "DHS has incorporated [*Sugay*'s] holding into its practice, requiring a showing of changed circumstances both where the prior bond determination was made by an immigration judge and where the previous release decision was made by a DHS officer"), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018).

The fundamental requirement of due process is the opportunity to be heard "at a meaningful time and in a meaningful manner," which requires an analysis of the meaningful time to hold a hearing. *Mathews*, 424 U.S 319 at 333 (quoting *Armstrong*,

380 U.S. at 552). On the facts of this case, the Court must determine whether a pre-deprivation hearing is required, or whether respondents may conduct a hearing after an individual is initially arrested and detained by ICE, and the timing and nature of such a hearing. *See generally, Cnty. of Riverside v. McLaughlin,* 500 U.S. 44, 55-56 (1991) (under the Fourth Amendment, a person arrested without a warrant must be brought before a neutral magistrate within 48 hours of arrest (or less, if the person can prove the probable cause determination was delayed unreasonably));[3] *see also Morrissey v. Brewer*, 408 U.S. 471 (1972) (probable cause hearing required after arrest for parole violation, and revocation hearing must take place within a reasonable time); *Martinez Hernandez v. Andrews*, No. 1:25-CV-01035 JLT HBK, 2025 WL 2495767, at *12 (E.D. Cal. Aug. 28, 2025) (holding that petitioner's ATD records indicated numerous violations and ordering a post-deprivation bond hearing within 10 days of court order); *Donahue v. Rhode Island Dept. of Mental Health,* 632 F. Supp. 1456, 1463 (D. R.I. 1986) (In considering a due process challenge to Rhode Island's involuntary civil commitment statute that required a post-deprivation hearing within 10 days after a person was arrested for being an alcoholic the Court concluded that "[i]t is settled that the hearing which determines the constitutionality of the confinement need not take place before the deprivation occurs."); *Quinonez Torres v. Hermosillo*, No. 26-cv-00076-TLF, 2026 WL 547591, at *10 (W.D. Wash. Feb. 23, 2026) (denying immediate release and ordering a

---

[3] The petitioner has not raised a Fourth Amendment issue; the Court therefore is not independently analyzing the arrest and detention under the Fourth Amendment. Yet the liberty interests of a person arrested under an immigration detainer or warrant, analyzed under the Fifth Amendment due process factors of *Matthews*, are similar to the liberty interests recognized in *Gerstein v. Pugh,* 420 U.S. 103 (1975). *See Kakkar v. Chestnut,* 1:25-CV-1627 JLT SAB, 2025 WL 3638298 (E.D. Cal. Dec. 15, 2025) (person recently released from prison would not have the same weighty significant private interest under *Mathews* as a person who had been successfully compliant with conditional release for a lengthy period before re-arrest on immigration matter).

post-deprivation hearing when petitioner was arrested for assault while released from ICE custody); *Bealter Reyes v. Hermosillo*, No. 26-cv-00270-TLF, 2026 WL 507678, at *5 (W.D. Wash. Feb. 24, 2026) (denying immediate release, and ordering a post-deprivation hearing when petitioner was arrested for theft while released from ICE custody); *Singh Sandhu v. Noem*, No. 2:26-cv-00465-TLF, 2026 WL 607701, at *2 (W.D. Wash. Mar. 4, 2026) (denying immediate release and ordering a post-deprivation hearing when petitioner was arrested for reckless driving while released from ICE custody); *Singh v. Noem*, No. 2:26-cv-00246-BAT, 2026 WL 592265, at *3 (W.D. Wash. Mar. 3, 2026) (denying immediate release and ordering a post-deprivation hearing when petitioner failed to report for 22 separate required check-ins while released from ICE custody); *Reyes v. Hernandez*, No. 2:26-cv 00633-GJL, 2026 WL 820481, at *6 (W.D. Wash. Mar. 25, 2026) (denying immediate release, and ordering a post-deprivation hearing when petitioner was arrested and pled guilty to sexual assault while released from ICE custody).

Here, on April 18, 2024, petitioner was released on his own recognizance on an OREC. Dkt. 7 (Van Daley Decl.), Ex. 2, (OREC). His release necessarily required consideration of his risk of flight and dangerousness. *See Ledesma Gonzalez v. Bostock*, 808 F. Supp. 3d 1189 (W.D. Wash. Oct. 7, 2025) ("Section 1226(a) provides that immigration officers may, in their discretion, detain noncitizens *or* may release them on conditional parole (also called an Order of Release on Recognizance, or "OREC"). 8 U.S.C. § 1226(a); … The corresponding regulation requires that, before granting release, the immigration officer must determine that such "release would not pose a

danger to property or persons, and that the [noncitizen] is likely to appear for any future proceeding. 8 C.F.R. § 236.1(c)(8)").

The record here reflects, and petitioner does not dispute, that he was arrested and charged with the offense of Driving Under the Influence on August 11, 2024. Dkt. 6 (Truong Decl.), ¶ 8; Dkt. 7 (Van Daley Decl.), Ex. 3 (Form I-213). The record reflects that petitioner was re-detained at a routine check-in on June 10, 2026, specifically based on the DUI arrest and his OREC was revoked on that basis.[4] Dkt. 6 (Truong Decl.), ¶ 8; Dkt. 7 (Van Daley Decl.), Ex. 2 (OREC), 3 (Form I-213); Dkt. 1 at 3.

Given petitioner's release from April 18, 2024, to June 10, 2026, the Court finds that petitioner has been deprived of an established interest in his liberty. *See E.A. T.-B.*, 795 F. Supp. 3d at 1320–21 ("Petitioner was arrested in public, detained and transferred to a facility in a different state, and remains in custody today undoubtedly deprives him of an established interest in his liberty."). Therefore, the first *Mathews* factor weighs in petitioner's favor, but the individual interest is not as strong as it would be for an individual without any showing of material changed circumstance, in particular as may be relevant to the assessment of dangerousness or flight risk.

Here, there is a changed circumstances as petitioner has been re-detained based on his arrest for Driving Under the Influence.

The record is somewhat contradictory and ambiguous regarding the status of criminal charges for the DUI arrest. The DHS Form I-213 states that petitioner had

[4] The Court notes that the petition states petitioner had appeared for a prior check-in in February 2025 and argues the failure to detain petitioner then undermines his re-detention in June 2026. But it is unclear when this February 2025 check-in occurred and whether respondents were, in fact, aware at that time of petitioner's DUI arrest.

charges pending in King County District Court under case number A3068421 and the petition includes that petitioner's understanding was that the charges were "pending." Yet petitioner submitted evidence from the King County District Court clerk indicating there was no case against petitioner under case number A3068421. Dkt. 10-1. And petitioner later submitted a letter from the King County District Court stating that the clerk had, in fact located a record for petitioner under case number 5A01127777 with a date listed of February 8, 2025 (it is unclear whether that date corresponds to the incident or the charging date) and a charge listed of "no valid oper license with valid ID." Dkt. 11.

It is not entirely clear whether these charges are related to the same offense or to a new offense. Even so, the parties do not dispute that petitioner was arrested for a suspected DUI offense on August 11, 2024. And while it is somewhat unclear whether petitioner has been formally charged, the record does not show the charge was dismissed, that petitioner was found not guilty, or that, if the charge has not yet been formally filed, any such charge cannot still be filed.

2) Risk of Erroneous Deprivation

The second *Mathews* factor considers whether a particular process results in a risk of erroneous deprivation of a protected interest and the probable value, if any, of additional or substitute procedural safeguards.

Here, the respondents contend that petitioner was properly re-detained based on his new arrest for Driving Under the Influence and he is not entitled to a bond hearing or any additional process as he is mandatorily detained under § 1225(b).

As discussed above, the fact that petitioner was initially released on his own recognizance from April 18, 2024, to June 10, 2026, strengthens his liberty interest. The risk of erroneous deprivation of petitioner's liberty interest in the absence of any hearing is high.

But petitioner's arrest for a crime involving driving under the influence constitutes a change in material circumstance from the circumstances of petitioner's initial release and, given the nature of the crime, could reasonably be seen as presenting circumstance requiring arrest and re-detention, and a post-deprivation hearing. Under these circumstances, the Court finds a prompt post-deprivation hearing would be consistent with due process.

3) Government's Interest

Under the final *Mathews* factors, the Court considers the government's interest in arresting and detaining petitioner without a hearing.

The government has an obvious interest "in protecting the public from dangerous criminal [noncitizens].'" *Rodriguez Diaz*, 53 F.4th at 1208 (quoting *Denmore v. Kim*, 538 U.S. 510, 515). Yet even when the government conducts a warrantless arrest for criminal charges, an individual is entitled to notice of the criminal charges at an initial appearance within 48 hours of being arrested, and the government must provide a detention or release hearing before the individual is committed for pretrial detention. *See Cnty. of Riverside v. McLaughlin,* 500 U.S. 44, 55-56 (1991); *Gerstein v. Pugh*, 420 U.S. at 112 (a determination of probable cause must be decided by a neutral and detached magistrate as soon as possible after a warrantless arrest); 18 U.S.C. § 3142;

*see also Gonzalez v. United States Immigration and Customs Enforcement*, 975 F.3d 788, 823-826 (9th Cir. 2020).

"[T]he government clearly has a strong interest in preventing [noncitizens] from 'remain[ing] in the United States in violation of our law.'" *Rodriguez Diaz*, 53 F.4th at 1208 (quoting *Denmore,* 538 U.S. at 518). "The Supreme Court has instructed that in a *Mathews* analysis, we 'must weigh heavily in the balance that control over matters of immigration is a sovereign prerogative, largely within the control of the executive and the legislature.'" *Id*. (quoting *Landon v. Plasencia*, 459 U.S. 21, 34 (1982)).

Providing a hearing before an immigration judge would require the government to bear the administrative costs of due process, but those costs are minimal when weighed against the severe deprivation of liberty at stake. The government's interest in bypassing basic procedural protections is low. *See Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019) ("If the government wishes to re-arrest [petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so *without a hearing* is low.") (emphasis added). Although it would require the expenditure of resources to provide petitioner a post-deprivation hearing — held by an immigration judge within a reasonable time after detention -- those costs are far outweighed by the risk of erroneous deprivation of the liberty interest at issue.

Because the respondents have failed to demonstrate a substantial interest in providing little or no due process protections, the administrative burden of providing a timely post-deprivation hearing is outweighed by the serious risk of erroneous deprivation, and the petitioner has a strong interest in continued liberty after previously

being released from April 18, 2024, to June 10, 2026. The third *Mathews* factor weighs in petitioner's favor of having a prompt hearing addressing the basis for his re-detention.

Based on this review of the *Mathews* factors, the Court finds a prompt post-deprivation hearing (to be held within 10 days, unless a continuance is granted for good cause) to be consistent with due process. The grounds for petitioner's re-detention and the material change in circumstance (petitioner's DUI arrest and any evidence regarding the status of formal charges) must be considered as well as petitioner's flight risk and risk of dangerousness generally.

**C. The Hearing**

The Court finds that petitioner is entitled to a bond hearing with the procedural requirements of *Singh v. Holder*, 638 F.3d 1196, 1203-08 (9th Cir. 2011), *abrogated on other grounds in Rodriguez Diaz,* 53 F.4th at 1196, 1210-1211: there must be a contemporaneous record of the hearing, and the respondents bear the burden of proving by clear and convincing evidence that petitioner is a flight risk or danger to the community. *Singh*, 638 F.3d 1196.

**CONCLUSION**

The Court **GRANTS** petitioner's petition for a writ of habeas corpus (Dkt. 1) **IN PART** and **ORDERS**:

1. The Court finds that petitioner is detained under 8 U.S.C. § 1226(a) and is not subject to mandatory detention under 8 U.S.C. § 1225(b).
2. The COURT GRANTS IN PART petitioner's request for habeas corpus relief. The Court DENIES petitioner's request for immediate release. The Court ORDERS the respondents to provide petitioner a hearing within 10 business

days after this Order is filed in which the respondents bear the burden of proof, under *Singh v. Holder*, 638 F.3d 1196 (9th Cir. 2011), to justify immigration re-detention by clear and convincing evidence, and there must be a contemporaneous record made of the hearing. The respondents must provide adequate notice and due process protections similar to hearings under *Morrissey v. Brewer*, 408 U.S. 471 (1972). The hearing shall be conducted by an immigration judge to determine whether release should be granted, or whether detention is warranted. If no such hearing is held, and neither party requests an extension of time based on good cause, then the respondents must release the petitioner on the same conditions he was previously subject to for the OREC, immediately after the 10-day deadline for a hearing expires.

3. The parties are directed to file a joint status report on or before **September 30, 2026**, confirming whether petitioner received a hearing held before an IJ as ordered above, or whether a continuance was granted, and report whether he has been released.
4. If petitioner is released, the respondents must return any personal property including personal identification documents (except passport) and employment authorization documents.
5. The parties' joint motion for relief from petitioner's deadline (Dkt. 12) is DENIED as moot.

//

//

6. The Court will entertain any post-judgment motion for attorney's fees, as requested in the petition.

Dated this 14th day of September, 2026.

Theresa L. Fricke

Theresa L. Fricke
United States Magistrate Judge